IN THE

# SUPREME COURT OF JUDICATURE

OF THE

S T A T E   O F   N E W - J E R S E Y ,

AT FEBRUARY TERM, 1852.

---

GEORGE W. COSTER ET AL., HEIRS AT LAW OF JOHN G. COSTER, DECEASED, v. THE NEW JERSEY RAILROAD AND TRANSPORTATION COMPANY.

1. The New Jersey Railroad and Transportation Company may, under the provisions of their charter, institute compulsory proceedings to acquire a title in fee to the land over which their road has been constructed, whenever such acquisition of title may be rendered necessary. There is nothing in the charter limiting the time within which such proceedings must be instituted.

2. To set aside the award of commissioners, on the ground that no allowance was made to the owners for the use and occupation of their land by the company, it ought to appear affirmatively that the commissioners omitted to include in their award damages or compensation to which the owners were legally entitled.

3. In the absence of statutory directions, the tribunal to whom application is made for the appointment of commissioners must judge of the sufficiency of the notice of making such application; and if it appear by the record that the notice was satisfactory to that tribunal, this court will not assume that the notice was invalid or insufficient.

4. If the application for the appointment of commissioners designates the land required for the use of the company, with such certainty as to leave no room for doubt or misapprehension as to the land actually required, the description is sufficient.

5. The objection, that the commissioners acted upon illegal evidence, or that they were governed by erroneous principles in making their appraise-

ment, if not apparent upon the record, must be supported by evidence. These are facts so be established by proof.

6. There are many facts, of which the commissioners must necessarily be informed, to enable them to make an award; and if such information be given in accordance with the truth, it furnishes no ground of exception to their proceedings.

7. It is not necessary that the judge by whom the appointment of commissioners is made should be satisfied that the parties were unable to agree for the price of the land previous to the notice of the intended application. It is enough if the judge is satisfied when the appointment is made that the parties are unable to agree as to the price.

*Certiorari*, directed to the clerk of the county of Hudson, to remove into this court the award and assessment of damages made by commissioners, appointed under the sixth section of the act incorporating the New Jersey Railroad and Transportation Company (*Harr.* 379), to determine the compensation and damages to which the plaintiffs are entitled, by reason of the occupancy of certain of their land by the railroad company, for the use of their road.

The cause was argued at November term, 1851, before the CHIEF JUSTICE and Justices NEVIUS and OGDEN.

*Gifford* and *I. W. Scudder*, for plaintiffs; *Vroom*, for defendants.

The following reasons were relied upon for setting aside the proceedings of the commissioners:

I. The statute contemplates that the proceeding to acquire title should be instituted by the company before taking possession of the land. As it appears, by the record, that the company held and occupied the land, as the location of their road, for several years previous to the application for the appointment of commissioners, the justice had no jurisdiction of the matter. The proceeding is therefore extra-judicial, null and void.

II. The proceedings are irregular and illegal, in the following particulars, *viz:*

1. The judge by whom the appointment was made was guilty of an excess of authority, in declaring that the road in question is *the road which by law the company are authorized to make.*

2. There was no proof before the judge that the parties were unable to agree for the price of the land, previous to the service of notice that application would be made for the appointment of commissioners.

3. There was no sufficient designation of the land required for the use of the road. *Doughty* v. *Somerville R. R. Co.*, 1 *Zab.* 446 ; *Vail* v. *Morris and Essex R. R. Co.*, 1 *Zab.* 191 ; *Smith* v. *Del. Falls Co.*, 2 *Harr.* 7 ; *Van Winkle* v. *The Cam. and Am. R. R. Co.*, 2 *Green* 166.

4. Illegal evidence was received by the commissioners.

5. The commissioners acted upon illegal principles in making their assessment. They made no allowance for fourteen years' occupation of the land by the company. *Vanschoick* v. *The Del. and Rar. Canal Co.*, *Spencer* 249.

6. The assessments for damages and fences are blended in one sum.

7. The report of the commissioners erroneously states that the appointment was made by the Chief Justice.

*Vroom*, for defendants, cited *Van Winkle* v. *Cam. and Am. R. R. Co.*, 2 *Green* 163 ; *Smith* v. *The Del. Falls Co.*, 2 *Harr.* 8 ; *New Jersey R. R. Co.* v. *Suydam*, 2 *Harr.* 33, 49.

The Chief Justice delivered the opinion of the court.

One of the reasons assigned for setting aside the award of the commissioners in this case is, that the application for their appointment was not made within the time prescribed by the act of incorporation. The company was incorporated by an act passed on the third of March, 1832. The appointment of commissioners was made on the twenty-third of December, 1850. It appears in evidence that the road has been located and constructed upon the premises in question, and has been in the actual occupancy of the company for a period of at least fifteen years. It is insisted, by the plaintiffs, that the statute contemplates the acquisition of title by the company before or at the time of their taking possession of the land ; and that an application for the purpose of acquiring title, made fifteen years after the company have occupied the premises, is not

within the contemplation of the act. It is a perversion of the spirit, if not of the letter of the enactment.

There is no time expressly limited by the charter within which these proceedings are to be instituted. The limitation, if it exist at all, must be implied either from the nature of its provisions or from the general scope and policy of the act. The obvious design of the sixth and eleventh sections of the act, so far as they relate to the point now under consideration, is to empower the company to acquire, *without the consent of the land owner*, the requisite land and materials for the construction of a continuous line of road between the designated *termini*. The qualifications and restrictions of that power are designed to secure to the' land holder a just compensation for his land and materials thus appropriated, before he is compelled to part with his property.

There is nothing in the act making it obligatory upon the company to acquire, at any time, a title in fee to the land over which the road is located. If the land holder consent to the occupancy of his land by the company, and the company see fit to hazard the construction of their road over land of which they are not the owners in fee, there is nothing in the act, nor in the reason of the thing, to render such arrangement illegal. Whenever the land holder determines his consent, and claims his land, then it becomes obligatory upon the company to acquire title or yield the possession.

By the last clause of the eleventh section, it is provided that the payment, or tender of payment, of all damages for the lands through which the railroad shall be laid out shall be made before the company shall enter and break ground on the premises, except for the purpose of surveying and laying out the road, unless the consent of the owner or owners be first obtained in *writing*. It is insisted that the necessary inference from this clause is, that the company must acquire *title* before they take possession, unless with the *written* consent of the owner. And it is certainly true (as was said by the court in *Doughty* v. *The Somerville R. R. Co.*, 1 *Zab.* 457) that the statute makes payment or tender a condition precedent to the *right* of the company to take the land, unless

by consent of the owner, and that it enables the owner to *compel* the company to acquire title, and to pay or tender the compensation before they take possession. But if the company enter upon land by the express or tacit assent of the owner, or without his knowledge, though they may be amenable in damages and liable to be ejected, it by no means follows that they are thereby debarred from subsequently acquiring title. The same reason which would justify the compulsory acquisition of title to land for the location of the road before its construction, where the owner withholds his consent, applies with equal force where the road has been constructed by consent over land to which the company have acquired no title, whenever that consent is determined. The power is equally necessary, in either case, to secure the object of the charter, *viz.* a continuous line of road. If the land holder have tacitly or expressly permitted the company to occupy his land twenty or fifty years with or without compensation, and then reclaims the land, the propriety and necessity of the company's acquiring title is precisely the same as if he had in the first instance refused permission to enter upon his land. It is not perceived that the spirit or policy of the act will be contravened, or that the rights of the land holder will be in any wise impaired by permitting the company to acquire title to land over which their road has been constructed, whenever, by the action of the owner, such acquisition of title may be rendered necessary. It is objected that, if this construction be adopted, the lands of absent or infant owners may be appropriated by the company without consent, and occupied for years without compensation. The answer is obvious. If the compensation and damages which the owners of the land have sustained by reason of the occupancy thereof by the corporation, which, in the language of the act, the commissioners are to determine, include the mesne profits, the statute has made express provision to compensate for the injury supposed. If, on the other hand, that clause of the statute does not, as was insisted on the argument, embrace mesne profits, then the company, *quoad hoc,* stand in the position of every other trespasser, and are equally liable to respond in damages.

It is further objected, that the commissioners have not included in their award any allowance for the use and occupation of the land by the company for fifteen years. Admitting that to be within the contemplation of the statute, how does it appear that such allowance was not made? The commissioners state, in the very language of the statute, that the amount awarded is "for the compensation and damages which the owners have sustained by reason of the occupancy of their land by the company," and they add "for all other damages which they may have sustained, which we, as commissioners, are authorized to assess under and by virtue of the aforesaid act." If, then, the commissioners are, by the terms of the act, authorized to include the annual value of the land, while occupied by the company, in their appraisement, it must be assumed, from the language of the award, that such value was included. There is no evidence to the contrary. But if such be not the necessary import of the award, how does it appear that the plaintiffs are entitled to any allowance for the yearly value of the land? It does not appear that the owners claimed any allowance for the yearly value, which was rejected by the commissioners. And if, as appears by the evidence, it was admitted that the company had occupied the land for fifteen years, may it not, also, have appeared to the commissioners that the plaintiffs had been satisfied, or for some cause were not entitled to the annual value during that period. To set aside the award of the commissioners on this ground, it ought to appear affirmatively that the commissioners had omitted to include in their award damages to which the plaintiffs were legally entitled.

Another reason assigned for setting aside the award of the commissioners is, that it does not appear that legal notice of the application for the appointment of commissioners was given to the land holder, nor that the premises. to which title was sought to be acquired was designated in the notice. The order appointing the commissioners recites, that it appeared to the judge by whom the appointment was made, that the land holder had *due notice* of the time and place of the application. The statute is silent respecting the notice. It does not

direct that any notice should be given, much less prescribe any particular form of notice. The case, therefore, does not fall within the principle of *Rex* v. *Croke* (*Cowp.* 26), recognised by this court in *Van Winkle* v. *The Railroad Company* (2 *Green* 166). It cannot be objected in this case, that the statute has not been pursued, or that the adjudication has fallen short of the requisitions of the act. The point of the objection is, that the party did not receive such notice of the application as he was entitled to by the general principles of law and the obvious dictates of justice, independent of any statutory requirement. This is admitted to be the right of a party in all cases of adversary proceeding, and was distinctly recognised by this court in *Vail* v. *The Morris and Essex R. R. Co.* (1 *Zab.* 191). But, in the absence of statutory directions, the tribunal by whom the appointment is made must judge of the sufficiency of the notice ; and, if it appear by the record that the notice was satisfactory to that tribunal, this court will not, in the absence of all evidence, assume that the notice was invalid or insufficient.

The notice given to the plaintiffs was " of the time and place of the application for the appointment of commissioners." That appointment, as appears by the record, describes the premises in question as certain lands of the plaintiffs, " being in the township of Harrison, in the county of Hudson, and state of New Jersey, lying between the Hackensack and Passaic rivers, it being a section of the land late of said John G. Coster, of sixty-six —— in width, now occupied by the New Jersey Railroad, as the location of its track." Assuming that the blank occurs after the words *sixty-six*, as well in the original application as in the record, and assuming, also, that the plaintiffs are not chargeable with notice of the provision contained in the charter of the company, that the road cannot exceed *sixty-six feet* in width, there would then be an omission to designate the width of the land required for the use of the company. It would, however, be described as " the land late of John G. Coster, in the township of Harrison, between the Hackensack and Passaic rivers, *now occupied by the New Jersey Railroad Company, as the location of its track.*" By

the report, it appears that the road, as located and occupied by the company, occupies a strip sixty-six feet in width, in a straight line across the plaintiff's land, and that it lies between two ditches excavated one on each side of the road. The location and site of the road was marked by clear and definite boundaries. There is no allegation that the plaintiffs owned more than one tract to which the description given of the land could apply. With the extent and boundaries of their own land they must be presumed to be acquainted. When, therefore, they were apprized that the company required a section of a given lot, occupied by the railroad company as the location of its track, there could have been, under the circumstances of this case, no room for doubt or misapprehension as to the land actually required. They had within their reach all the information to which by law they were entitled. *Vail* v. *The Morris and Essex R. R. Co.*, 1 *Zab.* 189; *Doughty* v. *The Somerville R. R. Co.*, *Ib.* 447.

The objection, that the commissioners acted upon illegal evidence, or that they were governed by erroneous principles in making their appraisement, is not sustained by the record or by the evidence in the case. These are facts to be established by proof. (*The New Jersey R. R. Co.* v. *Suydam*, 2 *Harr.* 33). One of the commissioners, the only witness examined, says: "We were regulated in our judgment by viewing the road, and land occupied by said road, and exercising our opinions of the value of the meadows so occupied, of which the commissioners were all judges." They judged then, as they were authorized to do, from their own view and examination of the premises (*Vanwinkle* v. *Railroad Co.*, 2 *Green* 162). That the commissioners saw deeds made to the company for adjoining tracts, and that they were informed, by a person not under oath, that the ditches were dug not by the land owner, but by the company, do not show that they either received incompetent evidence or acted upon illegal principles. There are many facts of which the commissioners must necessarily be informed to enable them to act at all; and if such information be given in accordance with the truth, it furnishes no ground of exception to their proceedings.

Another ground of exception to these proceedings is, that it does not appear by the record that there was any evidence before the judge who made the appointment, or that he was satisfied that the parties were unable to agree for the price of the land previous to the service of notice of the intended application. It is not necessary that it should so appear. It is enough that the judge is satisfied, when the appointment is made, that the parties are unable to agree as to the price. That fact distinctly appears by the record.

The allegation contained in the order of appointment, that the road located by the company over the plaintiffs' land is *the road which by law they are authorized to make*, is used, and can operate only as a description or designation of the road. It does not profess to *adjudge* that the road was laid out according to the act, nor can it operate to confirm or validate the location. It is, at best, but a description, and, whether true or false, can involve no usurpation or excess of authority.

That the judge who made the appointment is erroneously described in the report as the said Chief Justice, constitutes no objection to the validity of the proceedings. It is obviously a mere clerical error, which can occasion no prejudice. The judge by whom the appointment was made is clearly designated in the record by his name and style of office. A subsequent erroneous designation can lead to no misapprehension.

The damages are properly awarded. The whole amount of damages are first stated, and then the amount of assessment for making, running, and maintaining the fences, which forms a part of the total damages, is stated separately. By deducting the sum allowed for fencing from the general amount, the damages assessed for the occupancy of the land may be readily ascertained. *Id certum est quod certum reddi potest.* The form of the award is a substantial compliance with the requirements of the act.

None of the reasons assigned for reversal can prevail. The proceedings and award of the commissioners must stand confirmed, with costs.

AFFIRMED, 4 *Zab.* 730.

CITED in *Inhab. of Readington* v. *Dilley*, 4 *Zab.* 215; *State* v. *Newark*, 1 *Dutch.* 412; *Columbia Del. B. Co.* v. *Geisse*, 6 *Vr.* 476; *Columbia Del. B. Co.* v. *Geisse*, 7 *Vr.* 539; *State* v. *Hudson Tunnel R. R. Co.*, 9 *Vr.* 554.